IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GREY WOLF BJJ, LLC, Oregon,                          Civ. No. 6:23-cv-1872-AA

               Plaintiff,                          **OPINION & ORDER**

     vs.

GREY WOLF BJJ, LLC, Arizona;
JOHN L. CABAY,

               Defendants.

_____

AIKEN, District Judge:

       Plaintiff Grey Wolf BJJ, LLC, of Oregon brings claims for trademark infringement under 15 U.S.C. §§ 1114(a) and 11125(a) and copyright infringement under 15 U.S.C. § 1114(1) against Defendants Grey Wolf BJJ, LLC, of Arizona, and John L. Cabay. *See* Compl., ECF No. 1. Before the Court is Defendant's Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2). For the reasons below, Defendant's Motion, ECF No. 20, is DENIED.

BACKGROUND

       Plaintiff Grey Wolf BJJ, LLC, is a Brazilian Jiu Jitsu (BJJ) instructional company in Eugene, Oregon, that sells BJJ instructional services, goods, and competitions to students. Compl. ¶¶ 7–8 Plaintiff is the sole owner of U.S. Trademark Registration No. 6846517 ("GREY WOLF Wordmark") for the GREY WOLF mark ("the mark"). *Id.* at ¶ 8. Since early September 2017, Plaintiff has

exclusively and continuously used the mark on its website and, since no later than March 15, 2018, it has used the mark at its physical location. *Id.* at ¶ 9. Plaintiff is also the exclusive owner of U.S. Copyright Registration No. TX 8-982-357 covering its website, artwork and photographs and No. VA 2-271-678 covering its artwork with first publication date of September 29, 2019. *Id.* at ¶¶ 11–12.

Defendants, Grey Wolf BJJ, LLC and John L. Cabay operate a Brazilian Jiu Jitsu instructional company in Phoenix, Arizona that also sells BJJ instructional services and goods. *Id.* at ¶¶ 18, 27, 31; Def. Mot. at 2–3; Cabay Decl. ¶ 5, ECF No. 21.

Plaintiff alleges that Defendants have knowingly and willfully, and without Plaintiff's consent, infringed Plaintiff's mark and its copyrighted images on "advertising, websites, social media, clothing items, at competitions nationwide, and signage." Compl. at ¶¶ 18, 24–29. Plaintiff first learned about Defendants' infringing uses in November 2021 and promptly sent Defendants a cease-and-desist letter. *Id.* at  17–19. On or about December 3, 2021, Defendant Cabay called Plaintiff and "admitted to [Plaintiff] that the names were similar, and that [Defendant] did not understand why [he] could not use [the] name also." *Id.* at ¶¶ 20–21. Plaintiff alleges that "[d]espite [the] notice of infringement, [Defendants'] infringement of [the mark and the copyrighted works] continues." *Id.* at ¶ 35.

Plaintiff alleges that the infringing marks and copyrighted works "have been or will be seen by the same consumers at nationwide Jiu Jitsu competitions where both Plaintiff and Defendant[s] compete[,] creating actual confusion." *Id.* at ¶ 34.

Plaintiff's Grey Wolf BJJ, LLC is an Oregon limited liability company with its principal place of business in Eugene, Oregon. *Id.* at ¶ 2. Defendants' Grey Wolf BJJ, LLC is "an Arizona limited liability company with its principal (and sole) place of business in Phoenix, Arizona." Def. Mot. at 3.

LEGAL STANDARD

When faced with a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating that the court's exercise of jurisdiction is proper." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). But where, as here, the court's determination is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of the jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Uncontroverted allegations in the plaintiff's complaint must be taken as true[,]" and "[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Id.* at 1015.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Picot*, 780 F.3d at 1211. Oregon's long-arm statute is co-extensive with constitutional standards, so this Court need only determine whether its exercise of personal jurisdiction is consistent with constitutional due process. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990); Or. R. Civ. P. 4L; *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982). A federal court's exercise of personal jurisdiction satisfies due process where a defendant has "certain minimum contacts" with the forum state, "such that the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Courts recognize two forms of personal jurisdiction: (1) general or "all-purpose" personal jurisdiction and (2) specific or "case-linked" personal jurisdiction. *Great W. Capital, LLC v. Payne*, No. 3:22-cv-00768-IM, 2023 WL 8600536, at *3 (D. Or. Nov. 28, 2023); *Picot*, 780 F.3d at 1211. "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim." *Yahoo! Inc. v. La Ligue Contre le Racisme et l'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

## DISCUSSION

Defendants move to dismiss this case for lack of personal jurisdiction. The parties agree that only specific jurisdiction is at issue. Defendants are not subject to general personal jurisdiction in Oregon. Defendants assert that specific personal jurisdiction is also not appropriate because "[Defendants] do business only in Arizona by providing in-person instructional classes to people in the Phoenix metropolitan area." Def. Mot. at 3; Cabay Decl. ¶¶ 4–6. Defendants assert that they "do not conduct any business in Oregon [and] have no offices, facilities, employees, or any presence whatsoever in Oregon," Def. Mot. at 3, and "have never used, sold, offered to sell, or offered any services in the state of Oregon[,]" Cabay Decl. ¶ 21.

Specific or case-linked jurisdiction "focuses on 'the relationship[s] among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). The Ninth Circuit uses a three-part test to determine whether specific jurisdiction is proper:

> (1) the defendant must "purposefully direct [its] activities or perform some act or consummate some transaction with the forum" or otherwise "purposefully avail[] itself of the privileges of conducting activities in the forum;"
>
> (2) the claim must "arise[ ] out of or relate[] to the defendant's forum-related activities;" and
>
> (3) the exercise of jurisdiction must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004). The plaintiff bears the burden of satisfying the first two requirements. *Id.* If the plaintiff succeeds, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

I.    *Purposeful Direction (Calder Test)*

To determine specific personal jurisdiction in a trademark infringement action, which is tort-like, a plaintiff must show that the defendant purposefully directed its activities at residents of the forum state. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1228 (9th Cir. 2011). To show purposeful direction, a plaintiff must satisfy the three-part *Calder* effects test. *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Yahoo! Inc.*, 433

F.3d at 1206 (quoting *Schwarzenegger,* 374 F.3d at 803). The effects test requires a showing that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.*

### A.     *Intentional Act (Calder Test Prong One)*

Under the first prong of the effects test, Plaintiff must show that Defendants committed an "intentional act." Here, the parties do not dispute that Defendants intentionally used the allegedly infringing Greywolf mark. The first prong of the *Calder* test is satisfied.

### B.     *Express Aiming (Calder Test Prong Two)*

Under the second prong of the effects test, Plaintiff must show that Defendants expressly aimed their intentional act at the forum state. *Schwarzenegger*, 374 F.3d at 806.

Plaintiff alleges that Defendants expressly aimed their intentional act at Plaintiff's Oregon business because Defendants knew that Plaintiff resided in Oregon and knew that Plaintiff was the trademark holder—due to the November 2021 cease-and-desist letter and the December 2021 phone call—yet continued to infringe the mark. Yi Decl. ¶¶ 4–5, ECF No. 25. Under earlier Ninth Circuit precedent, that was enough to show express aiming in a trademark infringement case. *See Axiom Foods*, 874 F.3d at 1069 ("In the context of copyright infringement, we have held that a defendant's alleged willful infringement of a plaintiff's copyright, and its knowledge

of both the existence of the copyright and the forum of the copyright holder, established 'individualized targeting.'") (cleaned up).

But, in *Axiom Foods*, a copyright infringement case, the court called its prior caselaw into question. There, the Ninth Circuit explained that to determine specific jurisdiction after the Supreme Court's 2014 decision in *Walden v. Fiore*, 571 U.S. 277 (2014), a court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Axiom Foods*, 874 F.3d at 1070. In other words, to show express aiming, it is not enough that a nonresident defendant intentionally infringed a trademark with knowledge that the mark holder lives in the forum state. To justify the exercise of specific jurisdiction, a plaintiff must show that the infringing defendant directed activity to the forum state in other ways.

Here, Defendants argue that they did not expressly aim their intentional act at Oregon because "[t]hey operate a small local Phoenix business that offers in–person BJJ classes to students in the Phoenix metropolitan area[,]" and "have never had any business dealings of any kind with Plaintiff." Def. Mot. at 7; Cabay Decl. ¶ 5. They assert that they have "never used, sold offered to sell, or offered any services in the state of Oregon" or "participated in any competitions, exhibitions, or other events of any sort in the state of Oregon[.]" Cabay Decl. ¶ 21. Defendants also assert that they operate a "passive informational website—*i.e.*, [a website that] does not allow transaction of business." Def. Mot. at 7–8.

Though the express aiming prong can be satisfied by the operation of an interactive website ("where users can exchange information with the host computer"),

the "[m]ere passive operation of a website is insufficient to demonstrate express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023); *see also Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1157 (9th Cir. 2006) (explaining that "when a website advertiser does nothing other than register a domain name and post an essentially passive website and nothing else is done to encourage residents of the forum state, there is no personal jurisdiction[]" because "the objectionable webpage simply was not aimed intentionally at the forum state knowing that harm was likely to be caused there[.]") (internal quotation marks, brackets and citations omitted).

However, even operating a passive website can meet the express aiming requirement if coupled "with something more," such as "defendant's national commercial ambitions" or defendant's "individual target[ing]" of a plaintiff known to be a forum resident[.]" *Mavrix*, 647 F.3d at 1229. In some cases, the operators of a website "can be said to have 'expressly aimed' at a forum where a website 'with national viewership and scope appeals to, and profits from, an audience in a particular state.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020) (quoting <u>*Mavrix*</u>, 647 F.3d at 1231); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020–21 (9th Cir. 2002) ("[O]perating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient to confer personal jurisdiction."). As explained in *Herbal Brands*, "When the website itself is the *only* jurisdictional contact, [the] analysis turns on whether

the site had a forum-specific focus or the defendant exhibited an intent to cultivate an audience in the forum." *Herbal Brands*, 72 F.4th at 1092 (emphasis in original).

Here, the Court concludes that Plaintiff has alleged "something more" including Defendants' "national commercial ambitions" and Defendant's targeting of Plaintiff's business and customer base. First, even though Defendants operate a mere passive website, Plaintiff alleges that Defendants also advertise (with the allegedly infringing trademark) to a national market on social media accounts—accounts which by their very nature are interactive. Defendants do not address its social media advertising activity.

Second, Plaintiff alleges that both parties' businesses are based on a small highly specialized national marital arts instruction and tournament market. Plaintiff alleges that "in the martial arts world, national competitions are the main marketing channel by which Defendants' showcase their instructional services to potential students from every state. . . . including Oregon[.]" Yi Decl. ¶ 8. Plaintiff alleges that the industry's "standard business practice [consists] of sending athletes/customers from one's BJJ school to tournaments across the United States," Pl. Resp. at 5, ECF No. 24, that "[m]y business competes at the same national competitions as Defendants' business[,]" *id.* at 6, and that "[b]oth our services, especially at tournaments, can be provided to students from any State[,]" including Oregon. Yi Decl. ¶ 11.

Plaintiff alleges that Defendants are "part of [a] nationally affiliated [group] which acts cooperatively with locations in multiple states[,]" Yi Decl. Ex. C, and

advertises "nationally on the internet through their website and through social media platforms, including merchandise infringing on my trademark and name." Yi Decl. ¶¶ 12–14. Plaintiff also alleges that "the market for instructors who can potentially give students access to national competitions and notoriety is highly specialized" such that "potential student customers from one state, such as Oregon, often choose to travel to another state to study with an instructor, such as Arizona. *Id.* at ¶ 7.

Third, Plaintiff alleges that because Defendants compete with Plaintiff for students in a small and highly specialized national market, that Defendants effectively target Plaintiff's Oregon and potential customer base by creating confusion with the allegedly infringed marks. Plaintiff alleges that because of the infringing mark, "[t]here has been extensive actual confusion by potential customers, as well as with our business partners at national competitions, between my business and Defendant[s'] business[.]" *Id.* at ¶ 9. Plaintiff provides "examples of the active reach of Defendants' business into Oregon[,]" alleging that three students seeking to sign up for a national BJJ tournament with Plaintiff, mistook Defendants' business for Plaintiff's. *Id.* at ¶ 10. Plaintiff asserts that "[i]t is reasonable that I am losing business to Defendants as [a] result of their intentional confusion." *Id.* at ¶ 11.

Here, Defendants' passive website is not the *only* jurisdictional contact. Plaintiff alleges that Defendants have national commercial ambitions and competes with Plaintiff in a small and highly specialized national market, that Defendant effectively targets Plaintiff's business in Oregon by knowingly using the infringing mark and social media accounts to attract Plaintiff's students and potential

customers that might seek Plaintiff's services or merchandise. For these reasons, the Court concludes that Plaintiff shows express aiming, prong two of the *Calder* test.

C.    *Foreseeable Harm (Calder Test Prong Three)*

Under the third prong of the effects test, Plaintiff must show that the alleged harm to his business was foreseeable. Plaintiff argues that Defendants knew that their infringement "would likely cause confusion and harm to Plaintiff's business in Oregon, especially as both businesses are Brazilian jiu jitsu ("BJJ") schools that compete on a national stage for potential students." Pl. Resp. at 5. The Court concludes that harm to Plaintiff's business from infringing its mark was foreseeable because the parties compete for the same students in a small and highly specialized market. The third prong of the *Calder* test is satisfied.

Because Plaintiff has satisfied all three prongs of the *Calder* effects test, the Court concludes that Plaintiff makes a *prima facie* showing that Defendants purposefully directed their activity to Oregon.

II.    Arises out of the forum-related activities

As to the second specific jurisdiction requirement, Plaintiff also bears the burden of showing that the claim arises out of or relates to the defendant's forum-related activities. *Schwarzenegger*, 374 F.3d at 802. Defendants argue that Plaintiff does not meet its burden because "Plaintiff has not alleged and cannot . . . establish it would not have suffered [its] alleged injuries 'but for' Defendant[s'] purported contacts with Oregon." But Defendant reads the caselaw too narrowly. "The first half of that standard asks about causation; but the back half, after the 'or,'

contemplates that some relationships will support jurisdiction without a causal showing." *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 363 (2021) (explaining that "we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct"). Here, Plaintiff's infringement claims of "confusion and damages" arise out of and relate to Defendant's infringing actions that target Plaintiff's Oregon business and Oregon customer base. Plaintiff has made a *prima facie* case that its claims are related to Defendants' forum-related activity.

III.    *Reasonableness*

As to the third specific jurisdiction requirement, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.

To determine whether the exercise of jurisdiction comports with "fair play and substantial justice," *i.e.*, is "reasonable," the Ninth Circuit considers seven factors:

(1) the extent of the defendants' purposeful injection into the forum state's affairs;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and

(7) the existence of an alternative forum.

*Dole v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002).

Defendants argue that the Court's exercise of specific jurisdiction is unreasonable based on the first two factors. Defendants first argue that they did not "purposefully interject themselves into Oregon in any way[,]" and that "to defend themselves against litigation in Oregon would unreasonably deprive them of notice as to where they can be sued." Def. Mot. at 10. Indeed, the Court analyzed this very issue under the *Calder* effects test and concluded that Defendants purposefully directed activity (*i.e.*, interjected themselves) into Oregon by intentionally aiming at Plaintiff's business and customer base. Defendants cannot now claim surprise that they are subject to suit in Oregon.

Defendants next argue that they "would face a high burden to defend themselves in Oregon[,]" such that it would "offend 'traditional notions of fair play and substantial justice.'" Def. Mot. at 10 (quoting *Int'l* Shoe, 326 U.S. at 316). In other words, Defendants argue that to litigate in Oregon would be so expensive and inconvenient as to be unjust. Plaintiff responds that Defendants have knowingly infringed on and profited from "the intellectual property of an Oregon business[]" and that trademark litigation "does not require extensive discovery or travel." Pl. Resp. at 8.

The Court agrees that the expense and inconvenience to defend this case in Oregon is not onerous. Because this trademark suit is between two small companies in the western United States, it does not require extensive discovery or travel, and Arizona Defendants are a short plane ride from Oregon. Given the caselaw,

Defendants' argument is not persuasive. *See Dole Food Co.,* 303 F.3d at 1115 (finding that European defendants did not face an unreasonable burden to defend in California and noting the "modern advances" in communications and travel) (quoting *Sinatra v. Nat'l Enquirer, Inc.,* 854 F.2d 1191, 1199 (9th Cir.1988)).

As to the other reasonableness factors, Arizona has a strong interest in defending its residents against tort-like actions; Oregon has a strong interest in providing a forum for its residents who are tortiously injured; the suit has already begun with the filing of Plaintiff's Complaint in this Court on December 13, 2023 and is more efficiently resolved by proceeding in Oregon than by starting over in a different forum; and Oregon is the more convenient forum for Plaintiff since Plaintiff resides there. And, as to alternative forums, "whether another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." *Sinatra*, 854 F.2d at 1201.

Finally, the Court must "balance" the factors. *Dole Food Co.*, 303 F.3d at 1117. Here, two factors favor Defendants: Defendants' burden to defend in Oregon, which is not substantial; and Arizona's sovereign interest. That is not enough. Defendants have a "heavy burden . . . to prov[e] a 'compelling case' of unreasonableness to defeat jurisdiction." *Id.* Even when the factors are close, the Ninth Circuit has not found unreasonableness. *See Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 129 (9th Cir. 1995) (explaining that because the factors were split between the two parties, defendant did not "present[] a 'compelling case' that exercising jurisdiction over it would be unreasonable"); *Roth v. Garcia Marquez,* 942 F.2d 617, 625 (9th Cir.1991)

("Appellees may be able to show that the exercise of jurisdiction might be unreasonable, but the closeness of the question manifests that they cannot do so in a compelling fashion."). Here, the factors are not close. Defendants do not make a compelling case that subjecting them to personal jurisdiction in Oregon is unreasonable.

In sum, the Court concludes that Plaintiff has made a *prima facie* case for the exercise of specific jurisdiction over Defendants because Plaintiff successfully alleges that Defendants purposefully directed their activities to Oregon when they targeted Plaintiff's market share by using the allegedly infringing marks, that Plaintiff's infringement claims arise out of or relate to that Oregon-directed activity, and because Defendants have not shown that the exercise of jurisdiction would be unreasonable.

## CONCLUSION

For the reasons explained, the Court DENIES Defendant's Motion to Dismiss for lack of personal jurisdiction, ECF. No. 20.

It is so ORDERED and DATED this  28th  day of March 2025.


                           /s/Ann Aiken
                           ANN AIKEN
                           United States District Judge